**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DANE J. TAYLOR,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 26-CV-2314** |
| | : | |
| **RN-MMOYO,** *et al.*, | : | |
| **Defendants.** | : | |

**MEMORANDUM**

**COSTELLO, J.**                                                                               **JUNE 3, 2026**

Plaintiff Dane J. Taylor, who is currently confined at SCI Albion, brings this *pro se*

action alleging that his constitutional rights were violated while he was housed at SCI Phoenix.

The Court will grant Taylor's application to proceed *in forma pauperis* and will screen his

Amended Complaint[1] pursuant to 28 U.S.C. § 1915(e)(2)(B).  As explained below, the Court

will dismiss the Amended Complaint.

**I.      FACTUAL ALLEGATIONS**

Taylor alleges he was given another inmate's psychiatric medication in error and suffered

physical and emotional harm as a result.  Named as Defendants are: Superintendent J. Terra; B.

---

[1] Taylor commenced this matter by filing a Complaint (ECF No. 2) and application for leave to proceed *in forma pauperis* (ECF No. 1).  Because the *in forma pauperis* application was incomplete and he did not submit a prison account statement, Taylor was directed to do so in a prior Order.  (*See* ECF No. 4.)  Taylor submitted the required financial information on May 4, 2026.  (ECF Nos. 5, 6.)  On May 11, 2026, before the Court had an opportunity to screen the initial Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), Taylor submitted a motion for leave to file an amended complaint, (ECF No. 7), along with an amended complaint which consists of a preprinted form, handwritten supplements, and exhibits, (ECF No. 7-1 ("Am. Compl.") at 1-69).  The Court will grant the motion to amend and screen the Amended Complaint, as it is the operative pleading in this case.  *See Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) ("In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity.  Thus, the most recently filed amended complaint becomes the operative pleading." (citations omitted)).  The Court adopts the pagination supplied by the CM/ECF docketing system to the filings in this case.

Huner, Correctional Health Care Administrator; C.O. Wallace; R.N. Mmoyo; and R.N. Lisa Barone.[2]  (Am. Compl. at 2-4.)  They are sued in their individual and official capacities.  (*Id.* at 2-4, 18.)  Taylor claims he suffered physical and mental injuries, and seeks declaratory and injunctive relief, as well as money damages.  (*Id.* at 13, 26-28.)

Taylor states that he was in his cell on Bravo pod of the Alpha Block at SCI Phoenix on July 5, 2025, at approximately 8:05 p.m., when he was given medication by Defendant Nurse Mmoyo, who was escorted by C.O. Ellis.  (*Id.* at 15.)  Taylor alleges that the medication consisted of three different pills.  (*Id.*)  When he began to chew the pills, Taylor realized one was a capsule and it was the incorrect medication because he only gets a capsule with his morning medication.  (*Id.*)  Taylor was able to spit out portions of two of the three pills and alerted Nurse Mmoyo.  (*Id.*)  At first, Nurse Mmoyo told Taylor that he was mistaken and showed him the medication envelope which listed "Taylor" as the inmate, but another inmate's Department of Corrections ("DOC") number.  (*Id.* at 16.)  C.O. Ellis immediately called for Lieutenant Judge, who arrived at 8:15 p.m., and who instructed Nurse Mmoyo to check his "medical box."  (*Id.*)  Nurse Mmoyo returned at 8:20 p.m. with the proper medical envelope for Taylor, which still held his medication.  (*Id.*)  According to Taylor, Nurse Mmoyo became frustrated, stated, "[w]elp, you already took most of it," and walked away to continue distributing medication.  (*Id.*)  Lieutenant Judge prepared a medical escort for Taylor, C.O. Swan and C.O. Marcardo, who took Taylor to the medical triage area.  (*Id.*)

At the medical triage area, Taylor explained to Defendant Nurse Barone what occurred and "the effects he felt such as chest pains and other funny feelings."  (*Id.* at 16-17.)  Nurse

---

[2] Barone was identified in the initial Complaint as Nurse Jane Doe.  (*See* ECF Nos. 2 and 7.)

Barone told Taylor "it wasn't no big deal," "it wasn't illegal," by giving Taylor the incorrect psychiatric medication Nurse Mmoyo made a harmless mistake, and the symptoms Taylor was experiencing were merely due to panic. (*Id.* at 17.)  Taylor states that Nurse Barone "saw no need for medical attention" and instructed C.O. Swan and C.O. Marcardo to return Taylor to his cell to retrieve the remnants of the two pills that Taylor spit out. (*Id.*)  Because Taylor had brought the remaining pieces of the pills with him to the medical triage area, Taylor turned them over to the C.O.s in the hallway at 8:40 p.m. so that it could be captured on camera.[3]  (*Id.* at 17-18.)  Taylor alleges that he was "forced back to his cell" at approximately 9:30 p.m., even though he felt dizzy and lightheaded, and experienced chest pains. (*Id.* at 18.)

Taylor contends that his symptoms worsened upon his return to his cell and he "felt like pins and needles tingling in his fingertips, his heart felt as if it was going to explode.  His vision became blurry, and it became difficult to stand as he broke into a bad sweat." (*Id.*)  Although he pressed the emergency call button several times, no one answered the calls, and he tried to sleep. (*Id.*)  Taylor woke up disoriented at approximately 10:31 p.m. (*Id.*)  He claims his throat "swelled up tight" and his "uvula swelled to the size of a pinky finger." (*Id.*)  He got up to press the emergency call button again and realized that he had urinated on himself. (*Id.*)

Taylor further alleges that he stopped Defendant C.O. Wallace outside his cell at 10:31 p.m. to tell him he was having trouble breathing and that he had been given the wrong psychiatric medication by Nurse Mmoyo. (*Id.* at 19.)  He states that he even turned the light on to show C.O. Wallace "where his throat was tight." (*Id.*)  According to Taylor, C.O. Wallace stated, "I don't give a fuck" and "walked off abruptly," which, according to Taylor, was not done

---

[3] Taylor contends that Nurse Barone "made an attempt" to intimidate him by demanding that he turn over the remaining pieces of the pills or it would be considered contraband.  (Am. Compl. at 17.)

to get help but to continue his tour.  (*Id.*)  He further alleges that camera footage will show C.O.

Wallace stopping periodically, watching the television, and antagonizing Taylor as Wallace

continued his tour "as if Plaintiff wasn't choking in his cell struggling to stay conscious."  (*Id.*)

Taylor asserts that after C.O. Wallace completed his tour of Alpha pod of Alpha Block, he

returned to Bravo pod, and instead of getting help for Taylor, he announced to the entire pod,

"Y'all Taylor pissed himself."  (*Id.*)

However, Taylor also states that "[w]hile Defendant C.O. Wallace ignored Plaintiff

Taylor's banging and request for help, C.O. Muhammad arrived in the officers' bubble office

and responded to Plaintiff Taylor's emergency."  (*Id.* at 19-20.)  Taylor was taken from his cell

to the Alpha Block triage area and then taken to the medical department in a wheelchair.  (*Id.* at

20.)  He states: "[a]t medical, for a second time, Plaintiff Taylor was shot with steroids to reduce

the overdose and given other medicine to counter the allergic reaction, then hooked up to a[n] IV

of fluids to flush out as much [of] the drugs as possible."  (*Id.*)  He contends that Nurse Barone

became impatient with how slowly the IV treatment was proceeding, "ended it halfway through

the bag," sent Taylor to a seventy-two-hour observation cell, and stated, "[h]e's someone else's

problem."  (*Id.*)

Based on these allegations, Taylor claims that his rights under the Eighth and Fourteenth

Amendments were violated.  (*See id.* at 21.)  He alleges that Nurse Mmoyo gave him the

incorrect medication and caused a life-threatening reaction, and permanent physical and mental

damages.  (*Id.*)  He claims that medical negligence violated his Eighth Amendment rights, and

also deprived him of equal protection of the laws because he was the only inmate whose

medication was confused.  (*Id.*)  With respect to Nurse Barone, Taylor alleges that she was

negligent and violated his Eighth  Amendment rights by depriving him of medical attention when

he first when to the medical triage area, and violated his equal protection rights "by not saving Plaintiff Taylor before the worst nearly killed him." (*Id.* at 21-22.) He further alleges that Nurse Barone violated his rights "by not allowing the Plaintiff the full IV treatment." (*Id.* at 22.) As to C.O. Wallace, Taylor alleges that he "neglected the severity of the Plaintiff's emergency" by walking away from his cell, in violation of his Eighth and Fourteenth amendment rights. (*Id.*) He also alleges that C.O. Wallace violated his constitutional rights by antagonizing Taylor upon C.O. Wallace's return to the block after completing his tour, and by "humiliating him to the entire pod." (*Id.* at 23.) Taylor also seeks to assert negligence and constitutional claims against Defendant B. Huner for "not assuring his medical staff was properly trained to handle prescribed medication, as well as handling a[n] inmate who was given the wrong prescription," for the failure to resolve the situation after being personally informed of the events, and for not terminating the employment of Nurses Mmoyo and Barone. (*Id.* at 23-24.) Taylor seeks to present similar claims against Superintendent Terra, claiming that his rights were violated by Terra because he is responsible for the welfare of the inmates and failed to have properly trained staff, and because he failed to remedy the situation after being made aware. (*Id.* at 24-25.)

Taylor contends that he exhausted administrative remedies with respect to these claims by filing grievances regarding these events, (*see id.* at 29-33), and attached to the Amended Complaint the grievances and responses through the appeals process, (*see id.* at 35-62). Grievance #1155830 pertained to the actions of Defendants Mmoyo and Barone. (*See id.* at 29-30, 39-44.) Grievance #1155837 concerned allegations that C.O. Wallace disregarded Taylor's health and safety. (*See id.* at 30-31, 45-51.) Taylor filed two other grievances, #1166807 and #1178048, regarding an alleged lack of care for his enlarged uvula. (*See id.* at 31-33, 52-62.)

## II.    STANDARD OF REVIEW

The Court will grant Taylor leave to proceed *in forma pauperis* because it appears that he is incapable of prepaying the fees to commence this civil action.[4]  Accordingly, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the Amended Complaint if, among other things, it fails to state a claim.  The Court must determine whether the Amended Complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 566 (2007)); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).  At the screening stage, the Court will accept the facts alleged in a *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether that complaint contains facts sufficient to state a plausible claim.  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).

As Taylor is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).  However, conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  "[P]ro se litigants still must allege sufficient facts in their complaints to support a claim."  *Vogt*, 8 F.4th at 185 (quoting *Mala*, 704 F.3d at 245).  "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (quotation marks and citations omitted).  Additionally, the Court must review the Amended Complaint and dismiss the matter if it determines that subject matter jurisdiction is

---

[4] However, since Taylor is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

lacking.  *See* Fed. R. Civ. P. 12(h)(3); *Grp. Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*").

## III.    DISCUSSION

### A.      Federal Law Claims

Taylor brings claims pursuant to 42 U.S.C. § 1983, the vehicle by which federal constitutional claims may be brought against state actors in federal court.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  Even upon a liberal reading of the Amended Complaint, however, Taylor has failed to allege a plausible basis for any § 1983 claim against any named Defendant.

### 1.      Deliberate Indifference to Serious Medical Needs Claims

Taylor represents in the Amended Complaint that he is a convicted and sentenced prisoner.  (Am. Compl. at 5.)  The Eighth Amendment's prohibition of cruel and unusual punishment governs claims brought by convicted inmates challenging their conditions of confinement.  *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005) (citation omitted).  The Eighth Amendment requires prisons to provide adequate food, shelter, clothing, and medical care.  *Montanez v. Price*, 154 F.4th 127, 140 (3d Cir. 2025) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)), *petition for cert. filed sub nom. Pennsylvania v. Montanez*, 94 U.S.L.W. 3289 (U.S. Mar. 11, 2026) (No. 25-1073).

To state an Eighth Amendment claim based on the failure to provide constitutionally protected medical treatment, a prisoner must allege facts reflecting that prison officials were

deliberately indifferent to his serious medical needs. *See Farmer*, 511 U.S. at 834-35. As to the objective element of this Eighth Amendment claim, "a medical need is sufficiently serious if it is 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *Montanez*, 154 F.4th at 140 (quoting *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)).

As to the subjective element, a prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. The United States Court of Appeals for the Third Circuit recently described the deliberate indifference standard as follows:

> Negligence, even gross negligence, is not enough. A prison official must be at least subjectively reckless. That means he must consciously disregard a substantial risk of serious harm to the prisoner. He must both be aware of the relevant facts and actually draw the inference that the prisoner faces such a risk. If the official is not even conscious of the facts or the risk, his neglect cannot amount to punishment.

*DiFraia v. Ransom*, 171 F.4th 622, 628-29 (3d Cir. 2026) (quotation marks and citations omitted). Additionally, as to the prison official's behavior, "[i]ndifference requires more than just making the wrong judgment call or failing to prevent harm. And in the specific context of prison medical care, it is not enough that a prisoner or another doctor would prefer a different approach than the one corrections officials took." *Id.* at 629. "For better or worse, prisoners aren't constitutionally entitled to their preferred treatment plan or to medical care that is great, or even very good." *Id.* (quoting *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1277 (11th Cir. 2020)). In other words, "the Eighth Amendment does not create a general constitutional tort

of prison negligence.  It requires subjective blameworthiness as well as serious mistreatment or neglect."  *Id.*

Deliberate indifference can be inferred from circumstantial evidence, and is properly alleged "where (1) prison authorities deny reasonable requests for medical treatment, (2) knowledge of the need for medical care is accompanied by the intentional refusal to provide it, (3) necessary medical treatment is delayed for non-medical reasons, [or] (4) prison authorities prevent an inmate from receiving recommended treatment for serious medical needs." *Montanez*, 154 F.4th at 141 (quoting *Pearson v. Prison Health Serv.*, 850 F.3d 526, 538 (3d Cir. 2017)).  Thus, "[n]ot every complaint of inadequate prison medical care rises to the level of deliberate indifference."  *Anderson v. Price*, No. 22-3058, 2023 WL 5814664, at *2 (3d Cir. Sept. 8, 2023) (*per curiam*).  Indeed, "[w]here a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners."  *Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017) (citing *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993)).  Allegations of medical malpractice, negligence, and mere disagreement regarding the proper course of treatment are insufficient to establish a constitutional violation.  *Montanez*, 154 F.4th at 141 (citations omitted); *see also Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (stating that allegations of medical malpractice and mere disagreement as to proper medical treatment are insufficient to establish an Eighth Amendment violation).  The Court will address Taylor's Eighth Amendment claims against each named Defendant in turn.

### a.  Nurse Mmoyo

Taylor's allegations concerning Nurse Mmoyo do not reach the deliberate indifference level.  Taylor alleges that when Nurse Mmoyo was distributing medication, Nurse Mmoyo gave

him medication from an envelope that was intended for another inmate with the same name. (Am. Compl. at 15.) Taylor was able to spit out portions of two of the three pills when he realized that at least one of the pills was incorrect. (*Id.*) When Taylor alerted Nurse Mmoyo that the pills were not his, Nurse Mmoyo initially told Taylor that he was mistaken and showed Taylor the envelope from which he had taken the medication. (*Id.* at 15-16.) The envelope had "Taylor" written on it, but another inmate's DOC number. (*Id.* at 16.) At the direction of Lieutenant Judge, Nurse Mmoyo checked the "medical box" and discovered Taylor's proper medication there. (*Id.*) According to Taylor, Nurse Mmoyo became frustrated, stated, "[w]elp, you already took most of it," and walked away to continue distributing medication. (*Id.*)

These allegations simply do not support a reasonable inference that at the time he first distributed the medication to Taylor, Nurse Mmoyo knew of and disregarded an excessive risk to Taylor's health or safety, such that Nurse Mmoyo was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that Nurse Mmoyo drew the inference. *See Farmer*, 511 U.S. at 837. "Deliberate indifference requires obduracy and wantonness – not merely professional negligence." *Johnson v. Doe*, No. 23-3230, 2024 WL 4432083, at *3 (3d Cir. Oct. 7, 2024) (citing, *inter alia*, *Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause.")); *see also White v. Napoleon*, 897 F.2d 103, 108 (3d Cir. 1990) ("Mere medical malpractice cannot give rise to a violation of the Eighth Amendment."). Here, taking Taylor's allegations as true, at most, they are indicative of negligence, which is not deliberate indifference. Again, "[n]egligence, even gross negligence, is not enough." *DiFraia*, 171 F.4th at 628 (citation omitted). Accordingly,

10

Taylor has failed to plead a plausible Eighth Amendment claim based on Nurse Mmoyo's conduct.

### b.    Nurse Barone

Taylor alleges that Nurse Barone provided inadequate medical care when he was first brought to the medical triage area and when he returned for the second time. Taylor claims that when he was brought to the medical triage area the first time, he explained to Nurse Barone what occurred with the incorrect medication and "the effects he felt such as chest pains and other funny feelings." (Am. Compl. at 16-17.) He alleges that Nurse Barone told him "it wasn't no big deal," "it wasn't illegal," Nurse Mmoyo made a harmless mistake, and the symptoms Taylor was experiencing were due to panic. (*Id.* at 17.) He also states that Nurse Barone "saw no need for medical attention" and instructed C.O. Swan and C.O. Marcardo to return Taylor to his cell to retrieve the remnants of the two pills that Taylor spit out. (*Id.*) Because Taylor had brought the remaining pieces of the pills with him to the medical triage area, Taylor turned them over to the C.O.s at 8:40 p.m. (*Id.* at 17-18.) Taylor alleges that he was "forced back to his cell" at approximately 9:30 p.m., even though he felt dizzy and lightheaded, and experienced chest pains. (*Id.* at 18.) Upon his return to medical later that evening, Taylor was given steroids and other medication, as well as IV fluids to "flush out" his system. (*Id.* at 20.) He contends that Nurse Barone became impatient with how slowly the IV treatment was proceeding, "ended it halfway through the bag," sent Taylor to a seventy-two-hour observation cell, and stated, "[h]e's someone else's problem." (*Id.*)

As noted above, "prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners." *Palakovic*, 854 F.3d at 227 (citation omitted). For a claim of inadequate medical care, as opposed to a claim of a complete denial of medical care, courts will presume the

treatment was proper and will require allegations that the treatment received violates professional standards of care in some extreme way. *DiFraia*, 171 F.4th at 629 (citation omitted). "That means more than '[m]ere medical malpractice.'" *Id.* (alteration in original) (quoting *White*, 897 F.3d at 108). Further, "mere disagreement between the prisoner and medical personnel over the proper course of treatment" falls short of deliberate indifference. *Montanez*, 154 F.4th at 141 (citation omitted).

Taylor's allegations regarding Nurse Barone show at most the kind of disagreement regarding the care provided that is insufficient to support Eighth Amendment claims. The first time Taylor was treated in the medical triage area, Nurse Barone evaluated Taylor's condition, determined that his symptoms were due to panic, and concluded that he needed no medical attention, although, according to his timeline, he remained in the medical triage area for an additional forty-five minutes. (*See* Am. Compl. at 17-18.) The second time Taylor was treated at medical, he was given steroids and other medication, as well as intravenous fluids, although he contends Nurse Barone stopped the intravenous fluids halfway through the bag before sending him to a seventy-two-hour observation cell. (*Id.*) Taylor's allegations reflect that Nurse Barone exercised her medical judgment in treating him and do not plausibly raise an inference that "the treatment received violates professional standards of care in some extreme way." *See DiFraia*, 171 F.4th at 629. Even if her judgment was incorrect, her actions do not amount to deliberate indifference. Taking all of Taylor's well-pleaded allegations as true, he has failed to plausibly allege a claim for deliberate indifference against Nurse Barone.

### c.    C.O Wallace

Taylor alleges that he stopped C.O. Wallace at 10:31 p.m. when C.O. Wallace was walking past his cell in the RHU, informed C.O. Wallace that he had trouble breathing and that

he had been given incorrect psychiatric medication earlier, and turned the light on to show C.O. Wallace through the window of his cell "where his throat was tight." (Am. Compl. at 19, 45.) He further asserts that C.O. Wallace stated, "I don't give a fuck," and abruptly walked away from his cell "not to get help, but to continue his tour." (*Id.*) Taylor contends that video footage will show C.O. Wallace stopping periodically, watching the television, and antagonizing Taylor as he continued his tour to Alpha pod of the RHU. (*Id.*) In Grievance #1155837, which Taylor attached to the Amended Complaint and references therein,[5] Taylor also states that he "waved for the attention of staff in the bubble (as you'll see in footage at approximately 10:36), then hit the button for C.O. Muhammad, who got me immediate attention." (*See id.* at 45.) According to Taylor, C.O. Wallace returned to Bravo pod at 10:36 p.m. and told the pod, "Y'all Taylor pissed the bed." (*Id.* at 19, 46.) According to Taylor, C.O. Wallace ignored his requests for help but

---

[5] In Grievance #1155837, Taylor states that at approximately 10:31 p.m., he stopped C.O. Wallace at his cell to inform him that he was having trouble breathing and he was covered in urine. (Am. Compl. at 45.) Taylor alleges that cctv footage would show Taylor in the window of his cell, with his light on, showing C.O. Wallace where his throat felt tight. (*Id.*) He also states that C.O. Wallace responded, "I don't give a fuck," and walked away abruptly, "not to get help but to continue his round." (*Id.*) He contends that the footage will also show C.O. Wallace stopping periodically on the top tier, watching the television, and antagonizing Taylor as he continued his tour of Alpha pod of the RHU. (*Id.*) Taylor further states in relevant part:

> I waved for the attention of staff in the bubble (as you'll see in footage at approximately 10:36), then hit the button for C.O. Muhammad, who got me immediate attention. Then @ approximately 10:36 pm, you'll see C.O. Wallace came back to Bravo pod, instead of getting help, and continued to antagonize me. Telling the pod "Y'all Taylor pissed the bed."

> You'll see me, with my light on, literally waving for help, banging for help, and shouting to the best of my ability for help . . . to no avail. C.O. Wallace did not care.

(*Id.* at 45-46.)

C.O. Muhammad immediately responded to his emergency.[6]  (*Id.* at 19-20, 45-46.)  Reading the Amended Complaint as a whole, including Taylor's explanation of the events in Grievance #1155837, these allegations do not reasonably support an inference that C.O. Wallace was deliberately indifferent to Taylor's serious medical needs such that medical care was denied or delayed and that he suffered injury as a result.

To plead deliberate indifference under the Eighth Amendment, a plaintiff must allege that (1) he had a serious medical need, (2) the defendants were deliberately indifferent to that need; and (3) the deliberate indifference caused harm to the plaintiff.  *Durham v. Kelley*, 82 F.4th 217, 229 (3d Cir. 2023) (citing *Atkinson v. Taylor*, 316 F.3d 257, 266 (3d Cir. 2003)).  Under the circumstances of this case, Taylor cannot plausibly plead injury resulting from C.O. Wallace's alleged deliberate indifference because, as he acknowledges, C.O. Muhammad responded to his requests for help approximately five minutes after C.O. Wallace first walked by his cell.  Further, Taylor's own allegations demonstrate that C.O. Wallace's alleged failure to immediately seek assistance for Taylor did not materially delay his receipt of care or cause him additional injury or undue suffering.  *See Dates v. Winters*, No. 22-2253, 2022 WL 17958626, at *3 n.5 (3d Cir. Dec. 27, 2022) (affirming dismissal of Eighth Amendment claim where pretrial detainee failed to specify what harm, if any, was caused by delay in medical treatment and "at most . . . [allegations established] a 'mere disagreement as to the proper medical treatment,' which is insufficient to support a claim of deliberate indifference" (citing *Monmouth Cnty. Corr. Institutional Inmates*, 834 F.3d at 346)); *Davis v. Cumberland Cnty. Dep't of Corr.*, No. 13-3028, 2013 WL 5503665, at *11 (D.N.J. Oct. 2, 2013) ("[A]llegations of brief delays in treatment . . .

---

[6] In Grievance #1155830, Taylor states that he "informed C.O. Muhammad @ approximately 10:30 pm on 7-5-25 that my conditions had worstened [sic].  He got medical immediately."  (Am. Compl. at 35.)

cannot give rise to a viable § 1983 cause of action."); *McAnulty v. Mooney*, No. 13-3104, 2016 WL 4245558, at *6 (M.D. Pa. Aug. 11, 2016) (finding no deliberate indifference where inmate failed to assert any adverse consequences resulting from purported delay); *see also Figueroa v. Oberlander*, No. 22-0143, 2024 WL 2116744, at *4 (W.D. Pa. Apr. 18, 2024) (dismissing Eighth Amendment claim because the facts alleged showed that correction officer's refusal to immediately take inmate to the medical department after gate closed on inmate's shoulder causing severe shoulder pain did not prevent inmate from receiving timely medical care or cause further injury), *report and recommendation adopted*, No. 22-143, 2024 WL 2112200 (W.D. Pa. May 10, 2024); *Figueroa v. Oberlander*, No. 22-0143, 2023 WL 3937790, at *9 (W.D. Pa. May 16, 2023) (stating allegations of *de minimis* delay in treatment and care did not support Eighth Amendment claim), *report and recommendation adopted*, No. 22-143, 2023 WL 3932533 (W.D. Pa. June 9, 2023); *Rasheed v. DiSalvo*, No. 22-1871, 2023 WL 6609572, at *9 (W.D. Pa. Sept. 6, 2023) (dismissing Eighth Amendment claim where allegations showed only *de minimis* harm), *report and recommendation adopted*, No. 22-1871, 2023 WL 6598688 (W.D. Pa. Oct. 10, 2023). Considering the totality of circumstances including the short period of any potential delay caused by C.O. Wallace, Taylor has not alleged a plausible violation of his Eighth Amendment rights by C.O. Wallace.[7]

---

[7] It bears noting that to recover for mental or emotional injury suffered while in custody, a prisoner bringing a § 1983 action must demonstrate less than significant, but more than a *de minimis* physical injury.  *See* 42 U.S.C. § 1997e(e); *see also Mitchell v. Horn*, 318 F.3d 523, 535 (3d Cir. 2003).  Furthermore, to the extent Taylor seeks to present a standalone constitutional claim based on verbal harassment by C.O. Wallace, such claim is not plausible.  *See Washington v. Rozich*, 734 F. App'x 798, 801 (3d Cir. 2018) (*per curiam*) ("Verbal harassment of a prisoner, although distasteful, does not violate the Eighth Amendment." (citing *McBride v. Deer*, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) and *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000)); *Ayala v. Terhune*, 195 F. App'x 87, 92 (3d Cir. 2006) (*per curiam*) ("[A]llegations of verbal abuse, no matter how deplorable, do not present actionable claims under § 1983.").

d.      **B. Huner and Superintendent Terra**

Taylor alleges that Defendant Huner, who is identified as SCI Phoenix's Correctional Health Care Administrator, also violated his Eighth Amendment rights.  (*See* Am. Compl. at 23-24.)  The only factual allegations he presents are that Defendant Huner failed to assure that the medical staff was properly trained to handle prescription medication and inmates who are given the wrong medication, did "nothing to resolve anything" after being made aware of the incident, and allowed Nurse Mmoyo and Nurse Barone to continue to work.  (*Id.*)  As to Superintendent Terra, Taylor alleges that he is responsible for the operation of SCI Phoenix and the welfare of the inmates, and he violated Taylor's Eighth Amendment rights because staff were not properly trained.  (*Id.* at 24.)  He also claims that when he made Superintendent Terra "personally aware of the issue," Terra continued to deprive Taylor of any remedy or relief.  (*Id.* at 25.)  Taylor has not alleged a plausible basis for a claim against either Huner or Terra.

The personal involvement of each defendant in the alleged constitutional violation is a required element of a claim brought pursuant to § 1983, meaning the plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims brought against that defendant.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998); *see also Jutrowski v. Township of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct." (quoting *Iqbal*, 556 U.S. at 677)).  As an initial matter, Taylor's contention that Terra violated his rights because Terra is responsible for the welfare of inmates, is a conclusory allegation that impermissibly seeks to impose liability on Terra simply because he held a high-level position at SCI Phoenix.  *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) (affirming finding that inmate failed to state a plausible constitutional claim where he alleged that high-

16

level defendants, including warden of jail, were "in charge of agencies that allowed" a constitutional violation to happen, because a director cannot be held liable simply due to his position as the head of the agency (citing *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)).

A plaintiff cannot predicate liability for a § 1983 claim on a *respondeat superior* basis. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015) (citing *Rode*, 845 F.2d at 1207). Instead, in § 1983 actions, "[s]uits against high-level government officials must satisfy the general requirements for supervisory liability." *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017). A supervisor may be liable if he acts with deliberate indifference while establishing or maintaining a policy, practice, or custom that caused the alleged constitutional violation. *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014) (citations omitted), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). "Failure to" claims, such as a failure to train are generally considered a subcategory of policy or practice liability. *Id.* at 316-17 (citation omitted). A claim for supervisory liability or liability based upon a failure to train involves four elements: (1) that an existing policy created an unreasonable risk of constitutional injury; (2) the supervisor was aware of this unreasonable risk; (3) the supervisor was indifferent to the risk; and (4) the injury resulted from the policy or practice. *See Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989); *see also Chavarriaga*, 806 F.3d at 227 (same).

Taylor's allegations that B. Huner and Superintendent Terra each violated his Eighth Amendment rights by failing to train the staff subordinate to them, (*see* Am. Compl. at 23-24), are not supported by any facts and are wholly conclusory. Thus, the allegations are not sufficient to state plausible claims. *See Iqbal*, 556 U.S. at 678; *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) ("A plaintiff cannot survive dismissal just by alleging the conclusion to an ultimate legal issue."); *see also Jankowski v. Lellock*, 649 F. App'x 184, 188 (3d Cir. 2016)

17

(affirming dismissal of failure-to-train claim "relegated to a single sentence in the complaint" as "merely a rote recitation of a cause of action coupled with a legal conclusion" that was insufficient to satisfy the pleading standard).  Moreover, a supervisory claim requires "a showing that there was an actual constitutional violation at the hands of subordinates" before finding liability on the part of the supervisor prison official.  *Allen v. Eckard*, 804 F. App'x 123, 127 (3d Cir. 2020) (*per curiam*) (concluding that supervisory liability claim, including failure to train, was meritless where the plaintiff failed to make a plausible showing of an underlying constitutional violation at the hands of subordinates (citing *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010)).  To the extent that Taylor asserts failure-to-train claims based on an act of a subordinate official, because the Court has determined that there are no plausible underlying Eighth Amendment claims, neither Huner nor Terra may be held liable under this type of theory either.

A supervisor may also be personally liable under § 1983 "if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct."  *Barkes*, 766 F.3d at 316 (quotation marks and citations omitted).  "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity."  *Rode*, 845 F.2d at 1207.  "Although a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive."  *Chavarriaga*, 806 F.3d at 222.  Taylor's allegations that he made Huner and Terra aware of the incident, (*see* Am. Compl. at 24, 25), are not plausible bases for medical deliberate indifference claims.  Huner and Terra are non-medical prison officials who were entitled to rely on the medical judgment of the doctors and other medical professionals who treated Taylor.  *See*

18

*Spruill*, 372 F.3d at 236 ("Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on.  Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor."); *Stewart v. Pa. Dep't of Corr.*, 677 F. App'x 816, 819 (3d Cir. 2017) (*per curiam*) (affirming dismissal of claims where plaintiff "claimed that these Defendants, supervisory officials who do not participate in individual medical care decisions, simply failed to intervene in his medical care" because "[s]uch a claim is not viable under the Eighth Amendment").

Further, to the extent Taylor seeks to hold Superintendent Terra liable for an Eighth Amendment claim based on his role in the grievance process, such claim fails.  A prison official's involvement in the grievance process is generally not sufficient to allege liability under § 1983 for the events that gave rise to the grievance.  *See Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (affirming dismissal of Eighth Amendment claim where the only personal involvement alleged is the review and denial of the grievance); *see also Robinson v. Delbalso*, No. 22-2378, 2022 WL 17248100, at *2 (3d. Cir. Nov. 28, 2022) (*per curiam*) ("Contrary to Robinson's assertions, awareness of a grievance or complaint after the allegedly unconstitutional conduct has occurred, without more, is insufficient to establish personal involvement." (citation omitted)); *Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (*per curiam*) ("The District Court properly determined that Defendants Wenerowicz, Lewis, and Shaylor – who participated only in the denial of Curtis' grievances – lacked the requisite personal involvement [in the conduct at issue]." (citation omitted)).  Thus, nothing in Taylor's Amended Complaint suggests a plausible basis for a deliberate indifference claim against Huner or Terra.

19

### 2.      Equal Protection Claims

Taylor also seeks to present an equal protection claim against each of the Defendants. (*See* Am. Compl. at 21-25.)  He alleges that Nurse Mmoyo violated his rights to equal protection of the laws by "only confusing his medication" and Nurse Barone failed to save him "before the worst nearly killed him."  (*See id.* at 21-22.)  He further claims C.O. Wallace violated his equal protection rights by not "assuring his safety as he's obligated to during his Security Count tour" and "humiliating him to the entire pod."  (*Id.* at 22-23.)  Additionally, he contends Defendant Huner failed to "assur[e] him the same safety as the other inmates," "did nothing to resolve anything," and allowed Nurse Mmoyo and Nurse Barone to continue to work.  (*Id.* at 23-24.) With respect to Superintendent Terra, Taylor contends he failed to ensure Taylor "the same safety as the rest of the inmates" and deprived Taylor "of any remedy or relief."  (*Id.* at 24-25.)

The Equal Protection Clause of the Fourteenth Amendment provides that "no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  It does not forbid classifications but the distinctions between classes must be rationally related to a legitimate governmental purpose.  *Stradford v. Sec'y Pa. Dep't of Corr.*, 53 F.4th 67, 73 (3d Cir. 2022) (quotation marks and citations omitted).  To state an equal protection violation, a prisoner must allege "that he was treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected class."  *Mack v. Warden Loretto FCI*, 839 F.3d 286, 305 (3d Cir. 2016) (citation omitted).  Persons are similarly situated for purposes of an equal protection claim "when they are alike 'in all relevant aspects.'"  *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir.

20

2008) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)); *Children's Health Def., Inc. v. Rutgers, the State Univ. of N.J.*, 93 F.4th 66, 84 (3d Cir.) ("At the pleading stage, that means plaintiffs must adequately allege that they are alike in all relevant respects, . . . and must offer more than conclusory assertions." (quotation marks and citations omitted)), *cert. denied sub nom. Children's Health Def. v. Rutgers, the State Univ. of N.J.*, 144 S. Ct. 2688 (2024). Where the plaintiff does not claim membership in a protected class, he must state facts showing that: "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006); *see also Village of Willowbrook v. Olech*, 528 U.S. 562, 564-65 (2000). "Under the rational basis test, a law does not run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Stradford*, 53 F.4th at 77 (quotation marks and citations omitted).

While Taylor references the Equal Protection Clause and his Fourteenth Amendment rights throughout the Amended Complaint, he simply offers no facts in support of his assertions that his equal protections rights were violated and the Court can discern no plausible basis for an equal protection claim based on the facts alleged. "[L]abels and conclusions" are not enough, *Twombly*, 550 U.S. at 555, and a court "is not bound to accept as true a legal conclusion couched as a factual allegation," *id.* (quotation marks and citation omitted). Furthermore, general allegations that a plaintiff was treated "less favorably" than other inmates does not meet the pleading standard. *Jones v. Sposato*, 783 F. App'x 214, 217 (3d Cir. 2019) (*per curiam*) (citation omitted). Accordingly, all equal protection claims will be dismissed.

### 3. Official Capacity Claims

"Official capacity claims are indistinguishable from claims against the governmental entity that employs" the defendant, here the DOC.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).  Further, the Commonwealth of Pennsylvania and its agencies, including the DOC, are not "persons" who may be liable under 42 U.S.C. § 1983.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64-66 (1989); *Endrikat v. Little*, No. 23-2167, 2023 WL 8519196, at *3 (3d Cir. Dec. 8, 2023) (*per curiam*) (affirming finding that Pennsylvania DOC is not subject to suit under § 1983 (citing, *inter alia*, *Curtis v. Everette*, 489 F.2d 516, 521 (3d Cir. 1973))).  Additionally, the Eleventh Amendment bars suits seeking money damages against a state and its agencies in federal court when the state has not waived that immunity and the Commonwealth has not waived that immunity.  *See Will*, 491 U.S. at 66; 42 Pa. Cons. Stat. § 8521(b); *see also Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 309-10 (3d Cir. 2020) ("Eleventh Amendment immunity bars actions for retroactive relief against state officers acting in their official capacity." (citation omitted)).  Accordingly, all official capacity claims will be dismissed.

### B. State Law Claims

It is not clear whether Taylor intended to present any claims under state law but, to the extent he did, because the Court has dismissed his federal claims, the Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over any state law claims.  Accordingly, the only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,'" which "means that, unless there is some other basis for jurisdiction, no plaintiff may be a citizen

22

of the same state as any defendant." *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)). An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain. *See Washington v. Hovensa*, LLC, 652 F.3d 340, 344 (3d Cir. 2011). "[T]he domicile of a prisoner before his imprisonment presumptively remains his domicile during his imprisonment." *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010). It is the plaintiff's burden to establish diversity of citizenship. *Gibbs v. Buck*, 307 U.S. 66, 72 (1939); *see also Quaker State Dyeing & Finishing Co., Inc. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1143 (3d Cir. 1972) (stating that, in diversity cases, the plaintiff must demonstrate complete diversity between the parties and that the amount in controversy requirement has been met).

Taylor has not met his burden. Taylor does not allege the citizenship of the parties. Rather, he provides only the address of SCI Phoenix for himself, is suing Pennsylvania officials, and provides Pennsylvania addresses for all Defendants, which suggests that diversity is lacking. Accordingly, he has not sufficiently alleged that the parties are diverse for purposes of establishing the Court's jurisdiction over any state law claims he intends to pursue and all state law claims will be dismissed for lack of subject matter jurisdiction. The dismissal will be without prejudice to Taylor refiling his state law claims in state court, where federal jurisdiction will not be an issue.[8] *See N.J. Physicians, Inc. v. President of U.S.*, 653 F.3d 234, 241 n.8 (3d Cir. 2011) (explaining that dismissals for lack of subject matter jurisdiction are "by definition without prejudice" (citation omitted)).

---

[8] The Court expresses no opinion on the merits of any state law claims.

23

IV.    **CONCLUSION**

The Court will grant Taylor leave to proceed *in forma pauperis* and grant his motion to file an amended complaint.  The Amended Complaint will be dismissed.  All federal law claims will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.  All state law claims will be dismissed without prejudice for lack of subject matter jurisdiction.  Under the circumstances of this case, leave to amend will not be given, as amendment would be futile.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

An appropriate Order regarding dismissal follows, which shall be entered separately.  *See* Fed. R. Civ. P. 58(a).

**BY THE COURT:**

_____
**MARY KAY COSTELLO, J.**

24